CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 0 4 2005

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| STEPHEN E. BLUMBERG, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) Civil Action No. 6:04cv047 |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) By: Michael F. Urbanski |
| | ) United States Magistrate Judge |
| Defendant | ) |

## MEMORANDUM OPINION

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security in denying plaintiff's claim for a period of Disability Insurance Benefits and Supplemental Security Income benefits under the Social Security Act, 42 U.S.C. §§ 401-433, §§ 1381 - 1383(f). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1381(c)(3). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

The court's review is limited to a determination of whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the requirements for entitlement to benefits under the Act. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). If substantial evidence exists, the final decision of the Commissioner must be affirmed. Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion of a reasonable mind. Richardson, 402 U.S. at 400. The court must not undertake de novo review of the

Commissioner's decision, re-weigh the evidence in the administrative record, or make its own independent filings. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). Even if the court may have decided the case differently based on the evidence in the record, it must defer to the Commissioner's decision if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

Plaintiff Blumberg was born on June 24, 1957, and has obtained his GED in addition to taking some computer classes at a community college. His past relevant work includes being a teacher at Job Corps, an auto technician and a muller at a window manufacturer. Plaintiff was incarcerated from 1999 through 2002 at the Lawrenceville Correctional Center, at which time he was treated for a number of conditions, including chronic low back pain and chronic shoulder pain. (R. 115) An MRI taken of plaintiff's thoracic spine on September 18, 2001 revealed degenerative joint disease at multiple levels in the thoracic spine, but no evident compression, fracture or other significant abnormality. (R. 128) Shortly after his release, plaintiff began work as an auto mechanic at Kerr Tire in Lynchburg. (R. 167) However, on June 20, 2002, plaintiff sought treatment at the Blue Ridge Medical Center in Arrington, Virginia, complaining of low back and right shoulder pain. Plaintiff's medical record for that visit recounts that "he is able to perform the functions of an auto mechanic," but experienced pain and a sore back after carrying 15 sheets of dry wall. (R. 167) On examination, it was noted that plaintiff was unable to fully abduct his left arm due to discomfort, but no crepitus was noted in the shoulder capsule. (R. 167) The note further reports that plaintiff's left arm was intact in terms of strength and neurovascular elements. (R. 167)[1]

---

[1] It is peculiar that in this June 20, 2002 note, plaintiff appears to complain about his right shoulder, but the medical examination concerns his left arm and shoulder. Thereafter, plaintiff reports chronic pain in his left shoulder.

2

Over the next eighteen months, plaintiff was seen frequently at Blue Ridge Medical Center for left shoulder and back pain, and was also seen by an orthopedic specialist at UVA Health System. A consistent theme throughout the medical records is that plaintiff's left rotator cuff problems could be ameliorated by surgery, and this course of treatment is frequently mentioned in the medical notes. (See, e.g., R. 180-81, 184, 186, 216, 220, 224-26, 228) Dr. Mark Miller, the orthopedist at UVA, concluded in January, 2003 that "I think he is a good candidate for arthroscopic decompression." (R. 169) Plaintiff's medical record reflects a repeated reluctance to seek a surgical resolution of his shoulder problem. For example, on May 1, 2003, Dr. Buni's note states that plaintiff was "strongly advise[d] to keep Lynchburg orthopedics surgery evaluation and consider proceeding with surgery." (R. 228) Another physician in the Blue Ridge Medical Center practice provided plaintiff with a second opinion, recommending the same procedure on August 22, 2003, as follows: "We have recommended that he f/u w/ Dr. Miller as scheduled for arthroscopic decompression." (R. 224) Despite the many referrals and recommendations for surgery on his shoulder, plaintiff has not pursued such a procedure to such a point that his treating physician advised that he "cannot continue to refill narcotics if he is not following through with surgical evaluation/definitive treatment." (R. 225-26) The record has many references to visits to doctors, and there is no indication that plaintiff is unable to obtain treatment for economic reasons or other good cause. Rather, the record reflects only that the surgery has been scheduled twice and postponed, the last time being at the request of the doctor due to an emergency. (R. 245, 255) At the same time, the ALJ made no finding of noncompliance with prescribed treatment by plaintiff.

3

Plaintiff relies heavily on two letters from his treating physician, Dr. Tracy M. Buni, to establish his disability. Review of Dr. Buni's letters dated March 15, 2003 and November 25, 2003, when taken in connection with contemporaneous medical records and treatment notes, however, highlights the issue of noncompliance. (R. 175, 189) Indeed, in each of these letters, Dr. Buni states that plaintiff is being evaluated and later scheduled for rotator cuff repair surgery, and that he would not be able to work "pending further treatment and evaluation. Further recommendations for long-term disability will need to be determined following his surgery and response to future treatments." (R. 189) In short, since January, 2003 when Dr. Miller declared plaintiff to be a good candidate for rotator cuff surgery, that course of treatment has been postponed. The treatment notes reflect some frustration with the fact that plaintiff has not followed through with this recommendation, and Dr. Buni, plaintiff's principal treating physician, would only opine that plaintiff was unable to work "pending further treatment and evaluation," and that long term disability could only be assessed "following his surgery and response to future treatments." (R. 189)

I

Plaintiff's principal contention on appeal is that while the ALJ had the ability to consider medical imaging evidence regarding a tear to the left rotator cuff, plaintiff's complaints about his right shoulder were given short shrift, and that medical imaging evidence of a right rotator cuff tear was not available to the ALJ as the examination was not performed until a few weeks after the ALJ's decision. Plaintiff argues in this case that the Commissioner erred in failing to address plaintiff's right shoulder complaints, which are now documented by the imaging evidence presented to the Appeals Council, and that this decision should be reversed or remanded.

4

It is clear from the ALJ's decision that he discounted plaintiff's claims of right shoulder pain. The decision notes that the right shoulder pain was intermittent and not as severe as on the left side and that "[t]he record does not indicate that the claimant has received any treatment for the right shoulder . . . . There is no indication in the record that the claimant's daily activities or his ability to perform basic work activities is limited by the right shoulder pain." (R. 21) Contrary to the ALJ's finding, however, plaintiff testified at the administrative hearing that he received treatment in the form of two cortisone shots for his right shoulder pain and that an MRI was scheduled to evaluate his right shoulder. (R. 249-50) A more significant problem is raised, however, by the subsequent MRI of the right shoulder which revealed "full-thickness rotator cuff tear" of the right shoulder. (R. 214)

Thus, the first issue raised in this case stems from the fact that plaintiff provided additional material to the Appeals Council that had not been before the ALJ. When a claimant seeks review by the Appeals Council, the Council first makes a procedural decision to either grant or deny review. If the Appeals Council denies review, the denial renders final the decision of the ALJ. It is thus the decision of the ALJ, and not the procedural decision of the Appeals Council to deny review, that is subject to judicial scrutiny. See 20 C.F.R. §§ 404.967-981, 416.1467-1481 (2004). The Appeals Council must consider evidence submitted to it when it is deciding whether to grant review, "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Secretary, Dept. of Health & Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991) (en banc). Evidence is new if it is not duplicative or cumulative. Id. at 96. Evidence is material "if there is a reasonable possibility that the new evidence would have changed the outcome." Id. Where the Appeals Council

5

accepted the new evidence, but denied review, the Fourth Circuit requires that reviewing courts consider the record as a whole, including the new evidence, in order to determine whether the decision of the ALJ is supported by substantial evidence. Id.

In Bryant v. Barnhart, No. 6:04-CV-00017, slip op. at 9, 2005 U.S. Dist. LEXIS 15516, at *14-15 (W.D. Va. Jan. 21, 2005), the court held that when the Appeals Council fails to provide an explanation for its consideration of additional evidence, reviewing courts should determine whether the additional evidence creates a "conflict," is "contradictory," or "calls into doubt any decision grounded in the prior medical reports." Id. (internal citation omitted). If the new evidence creates conflict, is contradictory, or calls into doubt any decision grounded in prior medical reports, the case must be remanded to the Commissioner to weigh and resolve the conflicting evidence. If not, the case can be decided on the existing record without the necessity of a remand.

Considering the record as a whole, including the evidence submitted to the Appeals Council under Wilkins, the new evidence of the right rotator cuff tear creates a "conflict" and "calls into doubt" the ALJ's residual functional capacity determination, which relies on plaintiff's ability to occasionally lift 20 pounds and frequently lift 10 pounds with his right arm. (R. 26) As such, a remand to consider the new information concerning the condition of the right arm is appropriate.

II

Although the case is being remanded under sentence four of 42 U.S.C. § 405(g), plaintiff's claim for benefits raises another significant issue not addressed by the Commissioner which also should be considered on remand. The ALJ's residual functional capacity

6

determination expressly limited plaintiff to no use of his left arm. (R. 26) Plaintiff has not followed through on the repeated recommendations of his doctors to have a surgical repair of his left rotator cuff to remedy this problem. A claimant's noncompliance with treatment may provide a basis for denial of disability. While the record suggests noncompliance, the ALJ's opinion makes no finding as to that issue. As there is no finding at the administrative level that plaintiff was not compliant with his recommended course of treatment, or that he lacked good cause for failing to so comply, there is no way for a reviewing court to ascertain whether substantial evidence exists to support these findings as they were not made. Preston v. Heckler, 769 F.2d 988, 990 (4th Cir. 1985). As such, this case will be remanded with instructions to consider both the new evidence of the right shoulder rotator cuff tear and to evaluate plaintiff's noncompliance with the recommended surgical repair of his left rotator cuff.

The regulations require that claimants for Social Security Disability follow treatment prescribed by a physician if this treatment can restore claimant's ability to work, absent a good reason for not following such prescribed treatment. See 20 C.F.R. §§ 404.1530(b), 416.930(b). "Before a claimant can be denied benefits based on his noncompliance with prescribed medical treatment, however, he must be given a full opportunity to express the specific reasons for his decision not to follow the prescribed treatment." Nunley v. Barnhart, 296 F. Supp. 2d 702 (W.D. Va. 2003). Indeed, Social Security Ruling 82-59 states that "[d]etailed questioning may be needed to identify and clarify the essential factors of refusal" and that the "record must reflect as clearly and accurately as possible the claimant's . . . reasons(s) for failing to follow the prescribed treatment." On remand, therefore, the Commissioner should engage in such detailed questioning

and develop the record on the issue of plaintiff's failure to follow through on the prescribed rotator cuff surgery.

## CONCLUSION

For the reasons outlined above, in an accompanying Order entered into this day, defendant's motion for summary judgment will be denied and this case remanded to the Commissioner for consideration of the new and material medical imaging evidence regarding plaintiff's right shoulder rotator cuff tear and regarding the effect of plaintiff's noncompliance with the prescribed left rotator cuff surgery.

The Clerk of the Court hereby is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

Enter this 4th day of October, 2005.

United States Magistrate Judge